WILLIAMS, Judge.
Plaintiff, John R. Duncan, seeks recovery of medical expenses and personal damages sustained in an accident on June 13, 1967 at defendant’s health studios located on Youree Drive in Shreveport. Plaintiff visited World Wide Health Studios on that date in the company of a friend who was a regular member, and while there Duncan utilized a piece of athletic equipment designed for leg exercises. One of the weights on the mechanism jarred loose, fell and struck plaintiff in the mouth resulting in serious injuries. Judgment was rendered in plaintiff’s favor for $4,755.40 and defendant has appealed.
Plaintiff testified that he was not a member of defendant’s organization; that he went there on invitation of Mike Smith, his friend and an experienced athlete. Smith was encouraging plaintiff to join him in a work-out program. Plaintiff and Smith entered the premises on the evening of the accident, plaintiff testifying that they passed through the main workout room, an adjoining room where the leg press machine is located and on into the dressing room. Plaintiff did not check in with any supervisory personnel. After dressing out plaintiff and Smith went into the main exercise room where they worked out for an uncertain period of time during which they observed only one employee of defendant who was working out with a member in the larger room. The young men then went into an adjoining room, called the Olympic Room, where the leg press was located. This machine consisted of a platform with four upright rods on which a second platform runs up and down with stops located approximately halfway *837 down the rods. There are two spindles on the platform on which weights are placed. A person using the machine lies on his back on the lower platform and pushes the upper platform and weights upward.
Plaintiff testified that he had not done any weight lifting with anything other than bar bells and had been in a health studio perhaps twice before this occasion. He had never used a leg press before. The record shows that there were already some weights on the machine but that Smith put on additional weights. Smith testified that he was accustomed to using a similar machine at his college, and demonstrated the use of the machine to plaintiff. Plaintiff’s description of the accident is as follows:
“Well, Mike had — Michael Smith — had crawled under it and done, you know, I guess five or ten of them to show me how to operate it and then I crawled under it and I done (sic) one and on about the second one I raised up and it came down again and the weight flipped off the top of one of them spindles and hit me in the mouth.” (Tr. p. 28, lines 4— 10)
Plaintiff estimated the total amount of weight on the press at about sixty to eighty pounds. However, defendant’s manager testified that he examined the machine shortly after the accident and there was more than five hundred pounds on it. He further testified as to his opinion of the cause of the accident: that a person’s legs are normally the strongest part of his body and that it would not be difficult for an average person to push such a large amount of weight upward. He testified, however, that when plaintiff was letting the weight down, the strain was too much for him and caused the platform to descend rapidly and hit the stops, jarring the weight off. He further testified that he examined the machine and that it was in no way defective. He estimated that the spindles were improperly loaded to within a quarter of an inch or less of the top. He testified that an experienced lifter could work with 550 pounds total weight on the leg press.
Defendant’s manager testified that there were rules and regulations concerning members bringing guests to the studio and members were so notified. He stated, however, that it was difficult to determine who was a guest because of the large number of persons using the studios. If a person was known to be a guest a program was set up to suit his needs and desires and he was given a sample of what the studio had to offer. No guest was allowed to use any equipment without instructions on its use.
In order to determine plaintiff’s rights, his status in respect to defendant must be determined. Traditionally, the standard of care owed to one entering on land by the owner or occupier has been determined by the circumstances surrounding his entry. The categories of persons entering on land were set forth as follows in the case of Alexander v. General Accident Fire & Life Assurance Corporation, 98 So.2d 730 (La.App. 1st Cir. 1957):
“(1) A trespasser is one who enters the premises without the permission of the occupier or without a legal right to do so; and towards the trespasser no duty exists in most instances except to refrain from willfully or wantonly injuring him.
“(2) A licensee is one who enters the premises with the occupier’s express or implied permission, but only (according to the conventional description) for his own purposes which are unconnected with the occupant’s interests; and to him in addition to the duty owed to a trespasser, is owed the duty of warning the licensee of latent dangers of the premises if actually known by the occupier.
“(3) An invitee is a person who goes on the premises with the express or implied invitation of the occupant on the business of the latter or for their mutual advantage; and to him, the duty owed is *838 that of reasonable and ordinary care, which includes the prior discovery of reasonably discoverable conditions of the premises that may be unreasonably dangerous, and correction thereof or a warning to the invitee of the danger.” [98 So.2d 730, 731, 732]
Plaintiff here entered the premises in the company of a friend. He cannot be said to be a trespasser. The defendant clearly holds out a general invitation to the public to patronize its facilities. Defendant’s manager frankly admitted that their aim was to solicit business. Such studios do so by means of advertisements on radio, television and in newspapers. Here, plaintiff was on the premises in the company of his friend, a member of defendant’s studio, who was trying to persuade plaintiff to join him in a workout program. Therefore, it seems improper to classify plaintiff as a mere licensee under these circumstances. He was not there merely for his own purposes, but, was rather in the position of one who may confer a future benefit upon defendant studio. In a sense he might be said to stand in the position of a “prospective purchaser” of defendant’s services and must be classified as an invitee. Werling v. Garrard-Milner Chevrolet, Inc., 208 So.2d 428 (La.App. 4th Cir. 1968) writ refused; 252 La. 175, 210 So.2d 55 (1968).
The duty owed to an invitee is one of ordinary and reasonable care, including protection from negligence and reasonably discoverable hazards created by a third party. The duty includes an obligation of inspection of the premises and making them safe for the visit. The occupier is not an insurer of an invitee’s safety. See Comment, Invitee Status in Louisiana, XXVII Louisiana Law Review 796 (1967).
Certainly it was not foreseeable that plaintiff, an inexperienced athlete, would utilize a piece of advanced athletic equipment without proper supervision and instruction. Such equipment was not in itself inherently dangerous but was rendered so by the intervening unauthorized acts of plaintiff and his friend Smith.
We, therefore, conclude that there has been no showing of a breach of defendant’s duty to plaintiff of reasonable care and inspection in the absence of which there can be no recovery. Payton v. St. John, 188 So.2d 647 (La.App.2d Cir. 1966).
For the reasons above assigned the judgment of the trial court is reversed and plaintiff’s suit dismissed at appellee’s costs.
Reversed.